1  Michael C. McKay, Esq. (023354)
2  **MCKAY LAW, LLC**
3  5635 North Scottsdale Road, Suite 170
   Scottsdale, Arizona 85250
   Telephone: (480) 681-7000
4  Email: mckay@mckay.law
5  [Additional Counsel Identified Below]

6  *Counsel for Plaintiffs and the Proposed Class*

7

8
                    **UNITED STATES DISTRICT COURT**
9
                        **DISTRICT OF ARIZONA**
10

11 | Jason Sievert; Tracy Petway; and Vivan Bernard, individually and on behalf of the Knight-Swift Transportation Retirement Plan, | Case No. |
12 | | **Class Action Complaint** |
13 |                Plaintiffs, | |
14 | | |
15 | vs. | |
16 | Knight-Swift Transportation Holdings, Inc. | |
17 |                Defendant. | |
18 | | |

19        Jason Sievert; Tracy Petway; and Vivian Bernard (collectively, "Plaintiffs") are

20 current and former participants in the Knight-Swift Transportation Holdings, Inc.

21 ("Plan"). Plaintiffs bring this action as representatives of the Plan against Knight-Swift

22 Transportation Holdings, Inc. ("Defendant") for breach of Employee Retirement

23 Income Security Act's, 29 U.S.C. §§1001–1461 ("ERISA"): (1) fiduciary duty of

24 loyalty; (2) fiduciary duty of prudence; (3) prohibition on self-dealing transactions.

25

26

27

# **BRIEF OVERVIEW**

1.      ERISA fiduciaries to retirement plans are held to a standard that is described as the "highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016).

2.      ERISA's duty of loyalty requires retirement plan fiduciaries to discharge their duties to a plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

3.      Under ERISA, retirement plan fiduciaries must discharge their duties of prudence "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

4.      In accordance with 29 U.S.C. § 1103(a), the assets of a plan are held in a trust fund. Retirement plans are typically funded by a combination of wage withholdings by plan participants and contributions by employers. These funds are deposited into a plan's trust fund. Upon their deposit into a plan's trust fund, all participant contributions and any matching contribution become assets of the plan.

5.      Here, the Plan is funded as described about in Paragraph 4. The Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and

losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

6.    Plan participants pay for the Plan's administrative expenses through an array of direct and indirect methods.

7.    The deduction/payment of these administrative expenses from Plan participant accounts reduces the funds available to participants for investing and/or distributions.

8.    Plan participants typically make pre-tax contributions each pay period to their individual Plan accounts. They are immediately vested in their own contributions to their individual Plan accounts, plus actual earnings thereon. Defendant also matches, to a certain amount, contributions that Plan participants make to their individual Plan accounts. Vesting in the matching portion of participant accounts, plus actual earnings thereon, is based on years of credited service. A participant is 100% vested after five years of credited service. Notwithstanding the above, a participant is fully vested upon reaching normal retirement age, death, or permanent disability.

9.    When a Plan participant has a break in service prior to full vesting, the participant forfeits the balance of any unvested contributions in his or her individual account.

10.    The U.S. Department of Labor requires Defendant to file an annual Form 5500 Disclosure for the Plan. The Form 5500 Disclosure is part of ERISA's overall reporting and disclosure framework, which is intended to assure that employee benefit plans are operated and managed in accordance with certain prescribed standards and that

participants and beneficiaries, as well as regulators, are provided or have access to sufficient information to protect the rights and benefits of participants and beneficiaries who participate in employee benefit plans.

11.     Defendant has filed annual Form 5500 Disclosures for the Plan during the relevant time period, except the last annual Form 5500 Disclosure for the Plan was filed for the period covering the year ending 2022. Defendant has yet to file a Form 5500 Disclosure for the Plan covering the year ending 2023.

12.     The annual Form 5500 Disclosures are signed by Defendant under penalty of perjury, and with the following declaration: "I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete."

13.     The annual Form 5500 Disclosure for the period covering the year ending 2022 provides:

> **Forfeited Accounts**
> Forfeitures of nonvested contributions and earnings thereon shall be used to pay Plan expenses and to the extent any remain, to reduce the Company's matching contribution. Forfeited nonvested account balances are $2,605,250 and $1,928,867 at December 31, 2022 and 2021, respectively. During 2022 and 2021, forfeitures of $2,066,956 and $926,027, respectively, were used to offset Employer-matching contributions and to pay administrative fees.

14.     All of the Plan's annual Form 5500 Disclosures for the relevant time period contain similar language. They all state that forfeitures **shall** be used first to pay Plan expenses and that to the extent any forfeitures remain after **all** Plan expenses are

paid that then forfeitures may be used to reduce Defendant's matching contribution obligations.

15.    Defendant, however, admits in the Plan's Form 5500 Disclosures that it did not first use forfeitures to pay all Plan expenses. Instead, Defendant admits it took the forfeitures (Plan assets) and used those Plan assets for its own benefit to reduce Defendant's future contributions in the following amounts over the following years:

- 2022 – $2,066,956

- 2021 – $926,027

- 2020 – $775,825

- 2019 – $351,483

- 2018 – $272,927

- 2017 – $245,002

Thus, Defendant admits to having wrongfully taken for itself at least $4,638,220 of Plan assets from 2022 to 2017. Plaintiffs allege that Defendant has wrongfully taken for itself Plan assets in 2023 as well, but Defendant has yet to disclose the amount it has taken. Plaintiffs seek all available legal and equitable remedies for amounts wrongfully taken by Defendant from the Plan in 2023 as well.

16.    While Defendant's reallocation of the forfeitures in the Plan's trust fund to reduce its contributions benefitted the Defendant, it harmed the Plan along with Plan participants, by causing participants to incur deductions from their individual accounts each quarter, yearly, and/or at different time intervals to cover expenses that would otherwise have been covered by utilizing forfeited funds.

17.     It is not just the language in the Plan's Form 5500 Disclosures. The Plan Document, which describes the Plan's terms and conditions related to the operation and administration of the Plan provides Defendant must first use forfeitures to pay Plan expenses. Defendant violated the terms of the Plan Document by using forfeitures first for its own benefit and not for the benefit of the Plan. Forfeited funds were always used for Defendant's benefit and Plan participants always paid Plan administrative expenses during the relevant time period. There was no discretion, process, consideration of using forfeited funds for anything other than to benefit Defendant.

18.     Plaintiffs allege that given the specific context and circumstances prevailing at the time Defendant acted throughout the relevant time period with respect to forfeited funds that it was a violation of ERISA for Defendant to use forfeited funds for its own benefit and not for the benefit of the Plan or the Plan's participants.

## JURISDICTION AND VENUE

19.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(2) and (3).

20.     This judicial District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the Plan is administered.

21.     Venue is proper in this District because Defendant is headquartered in Phoenix, Arizona.

## **THE PLAN**

22.     The Plan is subject to the provisions of ERISA.

23.     Defendant established the Plan in 1992. The Plan has been amended at various times over the years. The Plan was last amended on July 13, 2020, to incorporate provisions of the CARES Act of 2020.

24.     The Plan is a qualified retirement plan commonly referred to as a 401(k) plan.

25.     The Plan is established and maintained under written documents in accordance with 29 U.S.C. §1102(a)(1).

26.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

27.     The Plan's Form 5500 for the year ending 2022 provides that there are 16,395 Plan participants with individual account balances in the Plan.

28.     The Plan's Form 5500 for the year ending 2022 provides there is $375,726,055 in net assets available for benefits in the Plan.

29.     The Plan's Form 5500 for the year ending 2022 provides Plan participants paid $1,273,542 to the Plan's recordkeeper in direct compensation (an administrative expense). It also discloses Plan participants paid the recordkeeper indirect compensation but the amount of indirect compensation (more administrative expenses) is not disclosed. The Plan's Form 5500 also discloses that Plan participants paid about another $220,000 to other third parties (not including the recordkeeper) for other administrative services provided to the Plan.

30.    The Plan's Form 5500 disclosures submitted by Defendant during the relevant time period show that every year during the relevant time period the Plan's administrative expenses, expenses paid by Plan participants, exceeded the amount of forfeitures that Defendant took for itself each year.

## **THE PARTIES**
### *Plaintiffs & Standing*

31.    Plaintiff Jason Sievert ("Sievert") is a current participant in the Plan. He pays administrative expenses to participate in the Plan. The administrative expenses he pays reduce the amount of his retirement savings.

32.    Plaintiff Tracy Petway ("Petway") is a former participant in the Plan. Petway was an active participant from 2017 to 2022. He paid administrative expenses to participate in the Plan. The administrative expenses he paid reduced the amount of his retirement savings.

33.    Plaintiff Vivian Bernard ("Bernard") is a is a current participant in the Plan. He pays administrative expenses to participate in the Plan. The administrative expenses he pays reduce the amount of his retirement savings.

34.    In terms of standing, §1132(a)(2) allows recovery for a "plan" and does not provide a remedy for individual injuries distinct from plan injuries. Here, Plaintiffs allege no individual injuries distinct from Plan injuries. All remedies are sought on behalf of the Plan.

35.    Section 1132(a)(2) authorizes any participant or beneficiary to sue derivatively as a representative of a plan to seek relief on behalf of the plan. 29 U.S.C.

§1132(a)(2). As explained in detail below, the Plan suffered millions of dollars in losses caused by Defendant's fiduciary breaches and it remains exposed to harm and continued losses, and those injuries may be redressed by a judgment of this Court in favor of Plaintiffs.

36.    To the extent the Plaintiffs must also show individual injuries even though §1132(a)(2) does not provide redress for individual injuries, Plaintiffs have standing to bring this action on behalf of the Plan because they are current and former participates in the Plan and were injured and Sievert continues to be injured by Defendant's unlawful conduct.

37.    To establish standing, Plaintiffs need only show a constitutionally adequate injury flowing from those decisions or failures. Plaintiffs allege such an injury for each claim. Plaintiffs have standing because the challenged conduct, including Defendant's actions resulting in Plaintiffs and the Plan participants paying administrative fees that they would not have had to pay had Defendant first used forfeitures to pay administrative expenses instead of for Defendant's own benefit. All Plan participants were affected by Defendant's imprudence in the same way because all Plan participants paid administrative expenses they should not have paid.

38.    For example, Plaintiffs' individual accounts in the Plan suffered losses because, in fact, their accounts were assessed administrative fees, which would not have been assessed (and paid) had Defendant discharged its fiduciary duties to the Plan and first used forfeited Plan assets to pay for Plan administrative expenses and not for Defendant's own benefit.

39.    All class members have standing for the same reason. Each class members' individual account in the Plan suffered losses because, in fact, each participants' account was assessed (and paid) administrative fees, which would not have been assessed (and paid) had Defendant discharged its fiduciary duties to the Plan.

### *Defendant*

40.    Defendant is the Plan Sponsor and a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because: (a ) it is a named fiduciary under the Plan, (b) during the relevant time period, it exercised discretionary authority and control over Plan management and/or authority or control over management or disposition of Plan assets.

41.    Defendant is also a fiduciary to the Plan because it is the Plan Administrator and it exercised authority or discretionary control respecting the management of the Plan or exercised authority or control respecting the disposition of Plan assets and has discretionary authority or discretionary responsibility in the administration of the Plan. 29 U.S.C. §1002(21)(A)(i) and (iii).

### **CLASS ACTION ALLEGATIONS**

42.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following proposed class ("Class"):[1]

> All persons who were participants or beneficiaries of the Plan, at any time between September 16, 2018, and the present (the "Class Period").

---

[1] Plaintiffs reserve the right to propose other or additional classes or subclasses in his motion for class certification or subsequent pleadings in this action.

43.     There are more than 16,000 current participants in the Plan. Class members are so numerous that joinder is impractical.

44.     Plaintiffs' claims are typical of the claims of the Class. Like other Class members, Plaintiffs participated in the Plan and suffered injuries because of Defendant's ERISA fiduciary breaches. Defendant treated Plaintiffs consistently with other Class members and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices and all Class members have been similarly affected by Defendant's wrongful conduct.

45.     There are questions of law and fact common to the Class. These questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> A.     Whether Defendant is fiduciary of the Plan;
>
> B.     Whether Defendant breached its fiduciary duty of loyalty by engaging in the conduct described herein;
>
> C.     Whether Defendant breached its fiduciary duty of prudence by engaging in the conduct described herein;
>
> D.     Whether Defendant engaged in ERISA prohibited transactions;
>
> E.     The proper form of equitable and injunctive relief; and
>
> F.     The proper measure of relief.

46.     Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other Class members. Plaintiffs are

committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

47.    This action may be properly certified under Fed. R. Civ. P. 23(b)(1). Class action status in this action is warranted under Fed. R. Civ. P. 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Fed. R. Civ. P. 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other Class members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

48.    In the alternative, certification under Fed. R. Civ. P. 23(b)(2) is warranted because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## FIRST CLAIM
### *Breach of Fiduciary Duty of Loyalty – Self Dealing*

49.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

50.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant was required to discharge its duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants

and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

51.    Defendant has continually breached this duty of loyalty with respect to its control and management of the Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the benefit of Defendant rather than solely in the interest of Plan participants.

52.    Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce or eliminate the administrative expenses charged to the Plan and Plan participants, Defendant chose to use these Plan assets for the purpose of reducing its own future contributions to the Plan, thereby saving Defendant millions of dollars during the Class Period at the expense of the Plan and Plan participants who were forced to incur avoidable administrative expense deductions to their individual accounts in the Plan.

53.    As a direct and proximate result of Defendant's fiduciary breaches described herein, the Plan suffered injury and loss for which it is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten gains to Defendant resulting from the breach of its duty of loyalty.

## SECOND CLAIM
### Breach of Fiduciary Duty of Prudence – Forfeited Funds

54.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

55.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant was required to discharge its duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

56.     Defendant has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, or in other ways that benefit solely the Plan, and instead using such Plan assets to reduce the Defendant's own contributions and financial obligations owed to the Plan.

57.     Defendant failed to engage in a reasoned and impartial decision-making process to determine that using the forfeited funds in the Plan to reduce the Defendant's own contribution expenses, as opposed to the administrative expenses charged to Plan participant accounts, was in the best interest of the Plan's participants or was prudent under the circumstances considering the language in the Plan document and disclosures to Plan participants, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

58.     By declining to use forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead using such Plan assets to reduce the Defendant's own contribution expenses, Defendant caused the Plan incur and pay for expenses that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

59.     As a direct and proximate result of Defendant's fiduciary breaches described herein, the Plan suffered injury and loss for which Defendant is personally liable and subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten gains resulting from the breach of its ERISA duty of prudence.

## THIRD CLAIM
### *Breach of ERISA's Anti-Inurement Provision*

60.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

61.     Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

62.     The balance in a participant's account that a participant forfeits when incurring a break in service prior to full vesting of the Defendant's contributions to the participant's account is an asset of the Plan.

63.     By electing to utilize these Plan assets as a substitute for the Defendant's own future contributions to the Plan, thereby saving Defendant millions of dollars in contribution expenses, Defendant caused assets of the Plan to inure to the benefit of the employer in violation of 29 U.S.C. 1103(c)(1).

64.     Defendant failed to employ any reasonable process or give any consideration with respect to the forfeited funds. Rather, Defendant always treated

forfeited funds as being reversionary in nature and diverted all of the funds to Defendant for its own benefit.

65.     Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from Defendant's violation of ERISA's anti-inurement provision as alleged in this claim and to restore to the Plan all profits secured through its use of Plan assets, and Defendant is subject to other equitable or remedial relief as appropriate.

### FOURTH CLAIM
### *ERISA Prohibited Transactions*

66.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

67.     29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

68.     Defendant is a party in interest, as that term is defined under 29 U.S.C. §1002 (14), because it is a Plan fiduciary and because Defendant is the employer of Plan participants.

69.     Defendant caused the forfeited funds to be removed from the Plan trust and transferred to another account controlled by Defendant. This is a transaction for

purposes of 29 U.S.C. § 1106. Defendant then used the forfeited funds (Plan assets) to satisfy Defendant's contractual obligations to the Plan and Plan participants.

70.     By electing to use forfeited funds in the Plan as a substitute for Defendant's contractual and legal obligations to the Plan, and thereby saving Defendant millions of dollars in contribution expenses, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

71.     As a result of these prohibited transactions, Defendant caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

72.     Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## FIFTH CLAIM
### *Failure to Adequately Monitor Other Fiduciaries*

73.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

74.     Defendant is the named fiduciary with the overall responsibility for the control, management and administration of the Plan, in accordance with 29 U.S.C.

§1102(a). Defendant is the Plan Administrator of the Plan under 29 U.S.C. §1002(16)(A)(i) with exclusive responsibility and complete discretionary authority to control the operation, management and administration of the Plan, with all powers necessary to enable it to properly carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Plan.

75.     Given that Defendant had the overall responsibility for the oversight of the Plan, Defendant had a fiduciary responsibility to monitor the performance of the other fiduciaries and service providers, including those delegated fiduciary responsibility to administer and manage Plan assets.

76.     A monitoring fiduciary must ensure that its monitored fiduciaries and service providers are performing their obligations in a prudent manner and in for a reasonable cost to the Plan, and must take prompt and effective action to protect the Plan and participants when they are not. Defendant breached its fiduciary monitoring duties by, among other things:

> a.     Failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;
>
> b.     Failing to ensure that the monitored fiduciaries and service providers had a prudent process in place for evaluating the Plan's administrative fees and forfeited funds and ensuring that forfeited funds were first used to pay administrative fees; and

c.    Failing to remove monitored fiduciaries whose performance was inadequate in that they continued to use forfeited funds for Defendant's benefit and to the detriment of the Plan and all Plan participants.

77.    Had Defendant discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct result of the breaches of fiduciary duty alleged herein, the Plan and Plan participants lost millions of dollars of retirement savings.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Plan, respectfully request that the Court:

1.    Find and declare that the Defendant has breached its fiduciary duties and engaged in prohibited conduct and transactions as described above;

2.     Find and adjudge that Defendant is personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

3.    Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

4.    Order disgorgement of all assets and profits secured by Defendant as a result of each ERISA violation described above;

5.    Order Defendant to provide all accountings necessary to determine the amounts Defendant must make good to the Plan under §1109(a);

6.    Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

7.    Surcharge against Defendant and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

8.    Certify the Class, appoint the Plaintiffs as class representatives, and appoint their counsel as Class Counsel;

9.    Award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

10.    Order the payment of interest to the extent it is allowed by law; and

11.    Grant other equitable or remedial relief as the Court deems appropriate.

DATED: September 16, 2024            Respectfully submitted,


By:  */s/ Michael C. McKay*
     Michael C. McKay, Esq.
     **MCKAY LAW, LLC**
     5635 N. Scottsdale Road, Suite 170
     Scottsdale, Arizona 85250
     Telephone: (480) 681-7000
     Email: mmckay@mckaylaw.us

     Marc R. Edelman, Esq.
     *Pro Hac Vice application forthcoming*
     **MORGAN & MORGAN, P.A.**
     201 N. Franklin Street, Suite 700
     Tampa, Florida 33602

1

Telephone: (813) 223-5505
Email: MEdelman@forthepeople.com

2

3

Brandon J. Hill, Esq.
Luis A. Cabassa, Esq.

4

*Pro Hac Vice applications forthcoming*
WENZEL FENTON CABASSA, P.A.

5

1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602

6

Telephone: (813) 224-0431

7

Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com

8

9

*Attorneys for Plaintiffs and the proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27