1  **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8   Jason Sievert, et al.,                )    No.  CV-24-02443-PHX-SPL
                                           )
9                                          )
                     Plaintiffs,           )
10  vs.                                    )    **ORDER**
                                           )
11                                         )
12  Knight-Swift Transportation            )
    Holdings, Inc.,                        )
13                                         )
                     Defendant.            )
14  ─────────────────────────────────────

15          Before the Court is Defendant's Motion to Dismiss (Doc. 11), Plaintiffs' Response

16  (Doc. 13), Defendant's Reply (Doc. 14), Defendant's Notice re: Supplemental Authority

17  (Doc. 15), and Plaintiffs' own Notice of Supplemental Authority (Doc. 16). For the

18  following reasons, the Motion to Dismiss will be granted.[1]

19  **I.     BACKGROUND**

20          This action is brought by Plaintiffs Jason Sievert, Tracy Petway, and Vivian Bernard

21  ("Plaintiffs") against Knight-Swift Transportation Holdings, Inc. ("Defendant" or "Knight-

22  Swift") for breach of the Employment Retirement Income Security Act of 1974 ("ERISA"),

23  29 U.S.C. § 1001 *et seq*. (Doc. 1 at 1). ERISA governs the administration of employee

24  benefit plans and protects the interests of plan participants and their beneficiaries with

25  uniform guidelines and rules. *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111

26  ─────────────────────

27          [1] Because it would not assist in resolution of the instant issues, the Court finds the
    pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R.
28  Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

(9th Cir. 2006). All three Plaintiffs are current or former participants in Defendant's defined contribution retirement plan (the "Plan"), and they allege that Defendant's decisions regarding the Plan's forfeited assets constituted a breach of the fiduciary duties of prudence and loyalty, a prohibited transaction, were contrary to ERIA's anti-inurement provision, and demonstrate that Defendant failed to monitor Plan fiduciaries. (*Id.*; Doc. 11 at 2).

Pursuant to ERISA, retirement plan assets are held in a trust fund. (Doc. 13 at 4). Here, Defendant is the sponsor and named fiduciary of the Plan[2] and is therefore "responsible for all settlor functions, including the design and drafting of the Plan, determining contribution rates, who receives benefits, and the amount of those benefits." (Doc. 11 at 3). The Plan is funded by a combination of employee contributions and discretionary employer contributions. (*Id.*; Doc. 13 at 4). Employees typically make pre-tax contributions to their individual Plan accounts through wage withholdings each pay period. (Doc. 13 at 4). Employees are immediately vested in their own contributions and actual earnings thereon. (*Id.*). Defendant also matches, to a certain amount, individual contributions, but vesting in the matching portion of participant accounts, and earnings thereon, is based on years of credited service. (*Id.*). A participant is 100% vested after five years of credited service, or otherwise upon reaching normal retirement age, death, or permanent disability. (*Id.*). However, when a Plan participant has a break in service prior to full vesting, any unvested contributions in their account are forfeited to the Plan's trust fund. (*Id.* at 5).

The Plan incurs regular administrative expenses for services including recordkeeping and legal fees. (Doc. 11 at 3). Plan sponsors, like Defendant, may choose to bear these administrative expenses, but they may also charge administrative expenses against the assets of the Plan or against participant accounts. (*Id.*). The Department of

---

[2] The relevant Plan "was created as a result of the merger of two existing plans on January 1, 2019" (Doc. 11 at 2) and was amended and restated effective January 1, 2022 (Doc. 12-8 at 2). To that end, Defendant argues that any claims asserted by Plaintiffs predating January 1, 2019 should be ignored and dismissed. (Doc. 11 at 2 n.1).

Labor requires Defendant to file an annual Form 5500 Disclosure for the Plan as part of ERISA's reporting and disclosure framework. (Doc. 1 ¶ 10). Defendant's Form 5500 Disclosure for 2022 states that "[f]orfeitures of nonvested contributions and earnings thereon shall be used to pay Plan expenses and to the extent any remain, to reduce the Company's matching contribution." (*Id.* ¶ 13). Plaintiffs contend that contrary to this statement, Defendant did not first use forfeitures to pay the Plan's administrative expenses, but rather used the forfeited assets to reduce its own future matching contributions, then charged the expenses to participants' individual accounts. (*Id.* ¶ 15). Plaintiffs therefore allege that Defendant "harmed the Plan along with Plan participants, by causing participants to incur deductions from their individual accounts . . . to cover Plan expenses that would otherwise have been covered by utilizing forfeited funds . . . as [Defendant] stated under penalty of perjury that it was supposed to do." (Doc. 13 at 6).

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III.    JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A

court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, under the incorporation by reference doctrine, a district court may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)).

Accordingly, the Court will consider the Plan document as incorporated by reference in Plaintiffs' Complaint (Doc. 1) because it forms the basis of Plaintiffs' claims and no party contests its authenticity. *See, e.g.*, *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363, at *2 (N.D. Cal. Nov. 1, 2024). Additionally, the Court takes judicial notice of the Plan's Form 5500 reports, which are referenced in Plaintiffs' Complaint, are matters of public record,[3] and are not subject to reasonable dispute. *See id.* However, the Court does not take judicial notice of the Summary Plan Description (Doc. 12-9), nor is it incorporated by reference in Plaintiffs' Complaint. *See id.*

## IV.  DISCUSSION

The dispute between Plaintiffs and Defendant boils down to this: Plaintiffs contend that Defendant Knight-Swift was obligated to use forfeited Plan assets to pay administrative Plan expenses; Defendant contends that it was not ever obligated to do so. (*See* Doc. 11 at 5). Supporting Plaintiffs' theory are Defendant's filings with the Department of Labor (the "Form 5500" reports) stating that forfeitures "shall be used" to pay Plan expenses. (Doc. 13 at 3). On the other hand, Defendant cites the language of the Plan itself, which grants Defendant broad discretion to choose whether to use forfeitures

---

[3] Form 5500 reports are available for download from the U.S. Department of Labor's "EFAST" system. *See* U.S. Dep't of Labor, *Form 5500 Search*, https://www.efast.dol.gov/5500Search (last visited Apr. 4, 2025).

to offset employer contributions or to pay Plan expenses. (Doc. 11 at 7). Defendant argues that "under ERISA, the Plan, not a Form 5500, describes a plan participants' [sic] rights and benefits, and controls to the extent there are any perceived conflicts with other documents." (*Id.*). Plaintiff counters that although Defendant had discretion to choose whether to use forfeitures to pay Plan expenses or offset employer contributions, once Defendant decided and—under penalty of perjury by filing the Form 5500—represented to participants that forfeitures *would* be used to pay Plan expenses, it violated ERISA by ultimately using those forfeitures for a different purpose. (Doc. 13 at 3). The question for this Court to decide, then, is whether Defendant's representations in the Form 5500 filings irrevocably committed it to using the forfeitures to pay Plan expenses, such that its subsequent choice to instead use those forfeitures to offset its own contributions may constitute a breach of its duties under ERISA.

Notably, this case is one of numerous recent cases in the Ninth Circuit challenging various retirement plan administrators' use of forfeited assets to reduce their own contributions or expenses instead of offsetting administrative costs to plan participants. *See, e.g.*, *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) ("This case presents a novel interpretation of ERISA on which there is no binding authority. Reasonable minds can differ, and several district courts do."). In fact, since fall 2023, more than 30 putative class action lawsuits have been filed alleging that the use of forfeitures to offset employer contributions violates ERISA. *See* Monica I. Perkowski et al., *Expert Insights—an Emerging Trend In ERISA Class Action Litigation: 401(k) Forfeiture Suits*, WOLTERS KLUWER EMP. L. DAILY, 2025 WL 339400. "These cases are still in their early stages with none reaching final judgment and only a handful of mixed decisions on motions to dismiss." *Id.*

In their Complaint, Plaintiffs assert five causes of action against Defendant: (1) breach of the fiduciary duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of the fiduciary duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (3) breach of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1); (4) an ERISA prohibited

transaction in violation of 29 U.S.C. § 1106(a)(1); and (5) failure to adequately monitor other fiduciaries in violation of 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A)(i). (Doc. 1 ¶¶ 49–77). The Court will now address each of these five claims in turn.

## A.    Breach of the Fiduciary Duties of Loyalty and Prudence

An employer's fiduciary duty of loyalty under ERISA requires it to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA also requires that a fiduciary discharge its duties

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1).

Plaintiffs allege that Defendant's choice to utilize forfeitures to reduce its own contributions, and therefore its choice to act "for the benefit of Defendant rather than solely in the interest of Plan participants," constitutes a violation of this duty of loyalty. (Doc. 1 ¶ 51). They also contend that Defendant's choice to use forfeitures to pay off Plan expenses was not a prudent decision under the circumstances. (*Id.* ¶¶ 55–58). Defendant responds that (1) "Plaintiffs are not entitled to the Plan's forfeited assets or to have their administrative expenses covered, thus they have no means to assert this [duty of loyalty] claim," and (2) "Plaintiffs ignore that Defendant's reallocation of the Plan's forfeited assets *does* provide a benefit to Plan participants," i.e., the assets are reallocated to participants' accounts via employer contributions. (Doc. 11 at 12). These claims require a determination of Plaintiffs' legal entitlement to have the Plan's administrative expenses covered by the

Plan's forfeited assets.

As a preliminary matter, "ERISA 'does not create an exclusive duty to maximize pecuniary benefits.'" *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (citations omitted). "Instead, the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their *promised* benefits." *Hutchins v. HP Inc.*, No. 5:23-CV-05875-BLF, 2025 WL 404594, at *5 (N.D. Cal. Feb. 5, 2025) (emphasis added); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("ERISA . . . seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits."). As long as the terms of an ERISA plan comply with the law, a fiduciary must comply with the terms of that plan as written. *See id.* at *6; *Wright*, 360 F.3d at 1100 ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA.").

The issue here is not whether Defendant has the discretion, broadly speaking, to use forfeited assets to decrease its own employer contributions under the Plan—it is clear under the law that it does, and, notably, Plaintiffs do not dispute this. (*See* Doc. 13 at 10–11 ("Plaintiffs [sic] theory of liability is not that forfeitures must always be used to pay Plan expenses; but rather, that given the specific facts here showing Knight-Swift decided and reported under penalty of perjury that forfeitures would be used to pay Plan expenses that it was wrong for Knight-Swift to thereafter take the money for itself . . . .")); *Hutchins*, 2025 WL 404594, at *4 (discussing "the long history of using forfeitures to reduce employer contributions"). The question is whether Defendant violated ERISA by *representing under penalty of perjury*, in its Form 5500s, that Plan forfeitures would be used to pay administrative expenses, but ultimately using those forfeitures to decrease its own contributions. (Doc. 13 at 3).

On one hand, Defendant argues that because the Plan gives Knight-Swift discretion to determine the "type and amount of any contribution," and it "does not guarantee either the making of Employer contributions or the payment of benefits under the Plan," they were complying with the terms of the Plan as written when they elected to use forfeited

assets to pay administrative expenses. (Doc. 12-8 at 41). However, in a recent decision in the Northern District of California, the court held that where defendants, "after giving themselves discretion to do so as fiduciaries, used Plan assets to reduce Clorox's non-elective contributions to the Plan instead of reducing Plan participants' administrative costs," the plaintiffs sufficiently alleged that the defendants were motivated by self-interest, which itself can violate ERISA's loyalty requirement. *McManus*, 2025 WL 732087, at *3; *see also Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995) ("[P]ension plan trustees' conflicts of interest can violate ERISA's loyalty requirement.").

This Court is more persuaded by the reasoning of the *Hutchins* court, which recently dismissed an amended class action complaint alleging similar violations of ERISA on a forfeiture allocation theory. *See Hutchins*, 2025 WL 404594. That court noted how long-standing Treasury Department reports and regulations indicate that forfeitures in defined contribution plans may be used to reduce future employer contributions. *Id.* at *4. To find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its duties of loyalty or prudence would contravene decades of federal regulations suggesting that such a decision is entirely permissible. Under Plaintiffs' theory, "in every plausible instance where [a fiduciary] would be given the option between using forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would always be required to choose to pay administrative costs." *Hutchins*, 2025 WL 404594, at *5.

Ultimately, Plaintiffs simply have not shown that the Form 5500s created any binding legal obligation for Knight-Swift to use forfeitures to pay administrative expenses. As Defendant points out, the Form 5500 reports appear to contain contradicting, or at the very least ambiguous, terms regarding the use of forfeited assets. For the forms submitted for 2018 through 2022 (Docs. 12-2, 12-3, 12-4, 12-5), each Form 5500 states, "Forfeitures of nonvested contributions and earnings thereon *shall* be used to pay Plan expenses . . . ."

(Doc. 12-2 at 35; Doc. 12-3 at 39; Doc. 12-4 at 40; Doc. 12-5 at 41 (emphasis added)).[4] However, each form *also* states that "Company contributions are reduced by forfeitures." (Doc. 12-2 at 33; Doc. 12-3 at 37; Doc. 12-4 at 38; Doc. 12-5 at 39; Doc. 12-6 at 41).

However, the Court need not place too much stock in the ambiguous language of the Form 5500 reports. The Form does not govern Plaintiffs' rights and Knight-Swift obligations, the Plan document does. (*See* Doc. 14 at 3). The Court reiterates the well-settled legal principle that an ERISA fiduciary's duty is fulfilled where it ensures that participants have received their promised benefits. *Hutchins*, 2025 WL 404594, at \*5. Plaintiffs furnish this Court with no reasons to think that representations made by a plan sponsor in its Form 5500 tax filings can promise any benefits to the beneficiaries of that plan.[5] And to the extent that Plaintiffs imply that Defendant committed perjury by filing inaccurate statements in its Form 5500 reports, the appropriate consequence of such noncompliance would be for the Department of Labor and the Internal Revenue Service to impose penalties on Defendant, which would occur independently of Plaintiffs' lawsuit.[6] *See* DEPT. OF LABOR, INSTRUCTIONS FOR FORM 5500 (2024), https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2024-instructions.pdf; 29 U.S.C. § 1132(c).

In sum, although Plaintiffs contend that the facts in this case "are much different

---

[4] Beginning in 2023, Knight-Swift amended its Form 5500 plan description to state that "[a]ny portion of the Plan's forfeiture account *may* be used to pay administrative expenses," rather than "*shall* be used." (Doc. 12-6 at 43 (emphasis added)).

[5] Assuming *arguendo* that the statements made in Defendant's Form 5500 reports accurately memorialized that it had decided to allocate forfeitures toward administrative expenses, Plaintiffs have not given this Court any reason to think Defendant would not be permitted to change its mind, especially where, by Plaintiffs' own admission (*see* Doc. 13 at 10), both choices (to use the forfeitures to pay Plan expenses, or to reduce employer contributions) are legally permissible, and where, by the terms of the Plan, Defendant "reserve[ed] the right to reduce, suspend, or discontinue contributions for any reason *at any time* . . . ." (Doc. 12-8 at 41 (emphasis added)).

[6] This Court takes no stance as to whether Knight-Swift ever failed to provide complete and accurate information in its Form 5500 filings.

than those in the *HP, Inc.*, *Clorox*, and *Thermo Fisher*" actions based on Defendant's Form 5500 reports, the Court does not see how Defendant's Form 5500 reports change the relevant facts of this case. (Doc. 13 at 10). The Form 5500 filings are backwards-looking financial documents meant to report annual information regarding employee benefit plans, not prescriptive documents meant to dictate a given employer's duties with regard to that plan. Accordingly, this Court will rule in accordance with the court in *Hutchins* and other courts finding that a plan sponsor's decision to allocate forfeitures toward reducing its own employer contributions, without more, is not sufficient to state a claim for a breach of fiduciary duty of loyalty or prudence under ERISA. *See Hutchins*, 2025 WL 404594, at *6–7 (dismissing fiduciary duty claims); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) (dismissing fiduciary duty claims); *Barragan v. Honeywell Int'l Inc.*, No. 24CV4529 (EP) (JRA), 2024 WL 5165330, at *4–5 (D.N.J. Dec. 19, 2024) (dismissing fiduciary duty claims and finding that the plaintiff's theory of liability was implausibly broad); *Naylor v. BAE Sys., Inc.*, No. 1:24-CV-00536 (AJT/WEF), 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (dismissing fiduciary duty claims where the relevant ERISA plan document *required* the employer to direct forfeitures toward employer contributions).

## B.    Breach of Anti-Inurement Provision and Prohibited Transaction

The anti-inurement provision of ERISA states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004). Similarly, a prohibited transaction under ERISA occurs when a fiduciary

knows or should know that such transaction constitutes a direct

1
2
3
4
5

> or indirect-- (A) sale or exchange, or leasing, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

6   29 U.S.C. § 1106(a)(1). To allege a violation of § 1106, a plaintiff must allege an unlawful
7   transaction.

8        The anti-inurement claim ultimately fails for the same reason Plaintiffs' fiduciary
9   duty claims fail: as the law currently stands, ERISA does not create any duty for a plan
10  sponsor to maximize pecuniary benefits, only to ensure that participants have received the
11  benefits promised to them—and as this Court has determined, the Form 5500 reports
12  simply do not establish that Defendant ever *promised*, in a legally binding manner, that it
13  would allocate forfeitures toward the Plan's administrative costs. Under the terms of the
14  Plan, "Defendant's employer contributions are not guaranteed and are entirely
15  discretionary." (Doc. 11 at 13). Furthermore, as Defendant points out, "Plaintiffs ignore
16  that Defendant's reallocation of the Plan's forfeited assets *does* provide a benefit to Plan
17  participants. When forfeited assets are reallocated to participants' accounts via employer
18  contributions, the participants' accounts increase—an obvious benefit." (*Id.* at 12). To the
19  extent that Plaintiffs argue that the use of forfeitures to offset employer contributions saved
20  Defendant "millions of dollars in contribution expenses" (Doc. 1 ¶ 70), these are mere
21  incidental benefits, and courts have generally held that receipt of "incidental" benefits to
22  an employer do not constitute a breach of the anti-inurement provision. *Hutchins v. HP
23  Inc.*, 737 F. Supp. 3d 851, 864 (N.D. Cal. 2024) (citing *Hughes Aircraft Co. v. Jacobson*,
24  525 U.S. 432, 442 (1999)); *Dimou*, 2024 WL 4508450, at *10.

25       Furthermore, this Court adopts the reasoning of the courts in *Hutchins* and *Dimou*
26  in finding that Plaintiffs fail to allege a prohibited transaction within the meaning of 29
27  U.S.C. § 1106. As the *Hutchins* court rightly points out, in *Wright*, the Ninth Circuit held
28  that an employer's decision to hold 15% of a plan's assets in employer stock was not a

11

"transaction," but "merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms." *Wright*, 360 F.3d at 1101. Similarly, here, the reallocation of Plan assets to provide benefits to employees as matching contributions is not a prohibited transaction. *See Hutchins*, 737 F. Supp. 3d at 868; *Dimou*, 2024 WL 4508450, at *11.

Accordingly, Plaintiffs' anti-inurement and prohibited transaction claims will be dismissed.

### C.    Failure to Monitor

Finally, Plaintiffs allege that Defendant failed to monitor other fiduciaries and service providers by, *inter alia*, "standing idly by as the Plan suffered losses as a result of its appointees' imprudent actions and omissions with respect to the Plan." (Doc. 1 ¶76). However, "[a] failure to monitor claim is only viable when there is an underlying claim for breach of fiduciary duty." *Partida v. Schenker Inc.*, No. 22-CV-09192-AMO, 2024 WL 1354432, at *9 (N.D. Cal. Mar. 29, 2024); *see also Wilson v. Craver*, 994 F.3d 1085, 1096 (9th Cir. 2021). Because Plaintiffs failed to state a claim for breaches of the fiduciary duties of loyalty or prudence, their derivative monitoring claim must also fail.

### V.    CONCLUSION

Ultimately, Plaintiffs' novel theory under ERISA is unsupported by the law as it currently stands. The Court is sympathetic to Plaintiffs' practical concerns about how Defendant has chosen to allocate Plan forfeitures; however, they have simply not shown how that choice violates the relevant law, especially where, as Plaintiff acknowledges (*see* Doc. 13 at 10), the explicit terms of the Plan do not *mandate* that Defendant use forfeitures to pay Plan expenses, but rather give Defendant discretion over forfeiture allocations. And to the extent that Plaintiffs contend Defendant made material misrepresentations regarding forfeiture allocations in its Form 5500 reports, it is up to the Department of Labor and the Internal Revenue Service to determine whether any such misrepresentations occurred and whether Defendant ought to be penalized for them—it is *not*, however, up to this Court to determine.

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Other courts contemplating similar ERISA cases have granted leave to amend where a plaintiff "might be able to plausibly allege disloyalty or imprudence based on more particularized facts or special circumstances present in this case." *Hutchins*, 737 F. Supp. 3d at 864; *Dimou*, 2024 WL 4508450, at \*9; *Barragan*, 2024 WL 5165330, at \*5. In the present case, and with the benefit of having been able to draft their Response *after* rulings have been issued in many of these similar ERISA cases, Plaintiffs have made it clear that the "particularized facts or special circumstances" that they believe distinguish this case from others is that "Knight-Swift reported [in its Form 5500 filings] throughout the relevant time period that it decided to use forfeitures first to pay Plan expenses." (Doc. 13 at 10). This Court has determined that those Form 5500 reports are not enough for Plaintiffs to nudge any of the claims brought in their Complaint over the line of plausibility. *See Twombly*, 550 U.S. at 547. A district court need not grant leave to amend where a pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The Court will therefore exercise its discretion to grant Defendant's Motion to Dismiss without leave to amend.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 11) is **granted** and this case is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 29th day of April, 2025.

Honorable Steven P. Logan
United States District Judge

13